Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| MARCOS DELGADO ADORNO<br><br>Recurrida<br><br>V.<br><br>FOOT LOCKERS RETAIL, INC., ET AL<br><br>Peticionario | KLCE202301402 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2018CV00031<br><br>Sobre: DESPIDO INJUSTIFICADO Y DISCRIMEN |
|---|---|---|

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

*Per curiam*

### SENTENCIA

En San Juan, Puerto Rico, a 18 de abril de 2024.

Comparece ante nos, Foot Locker Retail Inc. (en adelante, Foot Locker o parte querellada peticionaria) mediante recurso de *certiorari*. Nos solicita la revocación de la *Resolución "Nunc Pro Tunc"* emitida y notificada el 13 de septiembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Caguas.[1] Mediante el aludido dictamen, el foro *a quo* denegó una *Moción de sentencia sumaria* presentada Foot Locker.

A pesar de haberle concedido un término a la parte recurrida, el señor Marcos Delgado Adorno, (en adelante, señor Delgado Adorno o parte recurrida) para presentar su alegato en oposición, no ha comparecido, por lo que atendemos el recurso sin el beneficio de su comparecencia.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se modifica la resolución recurrida.

---

[1] Véase, págs. 1452-1467 del apéndice del recurso.

Número Identificador

SEN2024_____

**I**

Los hechos esenciales para comprender nuestra determinación son los siguientes. El 15 de marzo de 2018, el señor Delgado Adorno presentó *Querella Enmendada*[2] en contra de Foot Locker sobre despido injustificado al amparo de la Ley Núm. 80 de 1976, 29 LPRA sec. 185 *et seq.* y discrimen por razón de edad, de conformidad a la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 LPRA sec. 146 *et seq.*[3]

En la referida *Querella Enmendada,* el señor Delgado Adorno alegó que había sido contratado por Foot Locker desde el 13 de octubre de 1995 y que, en el año 2000, fue promovido a Gerente de Tiendas. El recurrido alegó que en el 2010 fue promovido a *Manager Trainer,* posición, la cual afirmó, era de mayor jerarquía que la de gerente. Sostuvo haber siempre recibido excelentes evaluaciones hasta el momento de su despido. Sin embargo, Delgado Adorno arguyó haber sido despedido de manera arbitraria, caprichosa e injustificadamente. Este relató en su querella que cuando regresó a Puerto Rico comenzó a laborar en la tienda Foot Action del Mall of San Juan, local en el que laboró como Manager Trainer hasta que fue despedido en el año 2017.

Explicó que las desavenencias con su patrono comenzaron como consecuencia de un incidente ocurrido con un empleado en la tienda, el 30 de enero de 2017. En dicha fecha, un empleado durante su jornada laboral realizó una compra para su hermano con descuento.[4] Al percatarse de la transacción, el recurrido sostuvo haber indicado al empleado que de ocurrir nuevamente le reportaría a Recursos Humanos. Según alegó en la querella, el señor Delgado Adorno

---

[2] Véase, págs. 1 a 6 del Apéndice.

[3] Véase, Sistema Unificado de Manejo y Administración de Casos (SUMAC), entrada núm. 15. La *Querella* fue presentada conforme al procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961. No obstante, de la Minuta del 23 de mayo de 2018 surge que, el foro recurrido convirtió los procedimientos al trámite ordinario. Véase, pág. 46 del apéndice del recurso.

[4] Especificó en su Querella el recurrido que, el patrono le otorgaba un 45% de descuento a los empleados para la compra de camisas a utilizarse para el trabajo. Además, le concedía un descuento de 30% para las compras de familiares que vivieran bajo el mismo techo que el empleado.

argumentó que esta transacción no estaba autorizada. **Afirmó que desde el 2016 había informado a su patrono que los empleados utilizaban incorrectamente el descuento concedido**. A raíz de dicho incidente, Foot Locker envió un investigador para llevar a cabo una auditoría de las compras en descuento realizadas por los empleados con el Código 45.[5] El recurrido sostiene que, como resultado de la investigación, el patrono le suspendió sin sueldo hasta despedirle el 11 de mayo de 2017. En ese momento, tenía 52 años por lo que alegó que el despido se debió a una actuación discriminatoria en su contra por razón de su edad. Puntualizó que el empleado que lo sustituyó tenía 25 años y ganaba mucho menos dinero que él, por tal razón y afirmando que cumplía con sus obligaciones, reiteró que su despido fue arbitrario y caprichoso, además de por su edad.

Por su parte, Foot Locker contestó la Querella y afirmó que el señor Delgado Adorno había incurrido en hechos u omisiones en el desempeño de su puesto como Gerente de Tiendas, que demostraron una actitud ineficiente o negligente, conducta impropia y falta de integridad y honestidad en crasa violación de ciertas reglas, prácticas y políticas laborales que justificaban su despido. En específico alegó que, como Gerente, violó las reglas y procedimientos relacionados con: a) procesos de venta y cobros de mercancía; b) adulteración o falsificación u omisión de operaciones válidas de venta y cobro en caja; c) falta de supervisión adecuada de los empleados a su cargo, algunos de los cuales llevaron a cabo ventas a terceras personas indebidamente dentro de la tienda para beneficio personal y utilizando procesos engañosos o dolosos contra el patrono en violación de reglas, prácticas y políticas de este. Foot Locker argumentó que el recurrido había sido objeto de disciplina por su pobre desempeño como empleado y Gerente

---

[5]Surge de la alegación número 9 de la Querella Enmendada que, mediante el "Código 45", el patrono le otorgaba un 45% de descuento a los empleados para la compra de camisas para el trabajo.

de Tienda. Expuso que el señor Delgado Adorno había incurrido en insubordinación en el desempeño de su trabajo y falló en su deber de mantener el buen orden, la disciplina, la integridad y la honestidad entre los empleados que supervisaba como principal representante patronal en la tienda. Foot Locker afirmó que el recurrido nunca se querelló sobre ningún alegado discrimen en el empleo ni utilizó las medidas preventivas para atender quejas de discrimen.[6]

Trabada así la controversia, las partes comenzaron el descubrimiento de prueba. Luego de varias incidencias procesales, el 10 de abril de 2019 se celebró la Conferencia con Antelación al Juicio.[7] En la referida vista, los asuntos controversiales fueron: la admisibilidad de las cámaras de video, la edad del demandante, la compensación que recibiría al amparo de la Ley Núm. 80-1976, si alguna, entre otros asuntos. Como resultado de la vista, el foro primario determinó que las partes debían exponer por escrito sus respectivas posiciones.

Así lo hizo Foot Locker, el 29 de abril de 2019, fecha en la cual presentó ante el foro recurrido una *Moción sobre la admisibilidad de los videos de cámaras de seguridad* a requerimientos del Tribunal sobre la admisibilidad de prueba de referencia.[8] Por su parte, el señor Delgado Adorno presentó su posición mediante *Oposición a moción sobre admisibilidad de videos de cámara de seguridad*. A la luz de lo resuelto en *Vega Rodríguez v. Puerto Rico*, 156 DPR 584 (2002), planteó que la admisibilidad de los videos de las cámaras de seguridad anunciados como parte de la prueba por Foot Locker no procedía, pues si se utilizaban para efectos de disciplina tenía que haber una política bonafide establecida sobre cámaras de seguridad. En la alternativa, en ausencia de un reglamento, Foot Locker tendría que justificar que existían circunstancias apremiantes que ameritaban la adopción de un

---

[6] Véase, *Contestación a Querella Enmendada*, págs. 14 y 15 del Apéndice.
[7] Véase, SUMAC, entrada núm. 65.
[8] Véase, SUMAC, entrada núm. 69.

sistema de vigilancia electrónica, sin previo aviso a los empleados. De lo contrario, a la luz de *Vega Rodríguez* se vería impedido de utilizar el material captado para propósitos de disciplinar a sus empleados – cosa que hizo en el presente caso.[9]

Por su parte, Foot Locker mediante réplica distinguió el caso de *Vega Rodríguez v. Puerto Rico*, supra, de los hechos del caso ante nuestra consideración y afirmó que no existe caso alguno del Tribunal Supremo que cree una regla de exclusión de evidencia obtenida por el patrono mediante un sistema de cámaras de seguridad, mucho menos sobre aquella para probar en juicio la justa causa del despido.[10]

Finalmente, el 6 de agosto de 2019, el foro recurrido notificó una determinación mediante Resolución, en la cual concluyó que los videos del sistema de cámaras de seguridad de la parte querellada eran admisibles en evidencia. Sostuvo que las cámaras de seguridad de la parte querellada estaban instaladas con el propósito de proteger la propiedad de actos de sabotaje, robos y hasta del mal uso de los recursos disponibles en el lugar de empleo, entre otras cosas. Es decir, las cámaras estaban puestas para fines legítimos atados a la seguridad de todos los visitantes, los empleados y la propiedad.[11]

El 10 de septiembre de 2019, Foot Locker presentó una *Moción de sentencia sumaria,* en la cual expuso 97 hechos para consideración del TPI, como hechos incontrovertidos. A base de estos solicitó la desestimación de la reclamación. Apoyó su pedido en que, según su parecer, de un examen de todos los hechos incontrovertidos surgía de que la decisión de despedir al demandante estuvo basada en el buen y normal funcionamiento de la empresa, y no en el mero capricho, por lo que procedía la desestimación de la causa de acción bajo la Ley Núm. 80, *supra.* En cuanto a la reclamación bajo la Ley Núm. 100, *supra,*

---

[9] Véase, SUMAC, entrada núm. 74.
[10] Véase, SUMAC, entrada núm. 79.
[11] Véase, SUMAC, entrada núm. 94.

igualmente sostuvo que los hechos incontrovertidos demostraban que el despido del Sr. Marcos Delgado obedeció a una razón no discriminatoria, no relacionada con su edad, sino al resultado de una investigación sobre hechos ocurridos en la tienda de la cual el señor Delgado Adorno era Gerente. Así alegó que, toda vez que Delgado Adorno descansaba en el esquema prima facie de discrimen y carecía de prueba para probar de forma directa su alegación procedía la desestimación de dicha causa de acción.[12] Por su parte, el señor Delgado Adorno se opuso, sostuvo que; existían numerosos hechos en controversia que impedían que el foro recurrido resolviese la controversia mediante un juicio por papeles, y que Foot Locker pretendía utilizar evidencia inadmisible para justificar el despido. Aceptó como hechos incontrovertidos los siguientes hechos 1 al 7 inclusive; 43, 46, 68, 74 y 80. No obstante, negó por encontrar que estaban controvertidos los hechos números 8 al 42 inclusive; 44 y 45; 47 a 61 inclusive; 62 a 67 inclusive; 69 a 72 inclusive; 73; 75 a 79 inclusive; 81 a 97. El señor Delgado Adorno sostuvo que existía controversia sustancial sobre los hechos esenciales que desencadenaron en la alegada investigación que llevó a cabo Foot Locker. Afirmó que los hechos propuestos por el patrono constituían prueba de referencia inadmisible en evidencia porque se basaban en testimonio de personas sin conocimiento personal de los hechos y mucha de la documentación que pretendían utilizar para sostener los alegados hechos como incontrovertidos descansaban exclusivamente en prueba de referencia inadmisible. Por último, reclamó que se pretendía establecer como hechos incontrovertidos, información que surgía del testimonio de terceras personas, lo que constituía prueba de referencia múltiple inadmisible.

---

[12] Véase, SUMAC, entrada núm. 102.

El 22 de octubre de 2019, el TPI emitió Resolución acogiendo como hechos no controvertidos 1 al 74, según propuestos por Foot Locker. No obstante, determinó no dictar sentencia sumariamente por estar en controversia; 1) el contenido y autenticidad de los videos de las cámaras de seguridad de la tienda Foot Locker con relación a las transacciones en controversia y, 2) el nexo entre el contenido de los videos y la causa del despido del querellante Marcos Delgado Adorno.[13] El 15 de noviembre de 2019, el foro recurrido se sostuvo en su determinación, a pesar de una oportuna reconsideración. Al día siguiente, Foot Locker presentó un recurso de *certiorari* a este tribunal el cual fue identificado como KLCE201901669, el cual fue denegado mediante Resolución de 26 de febrero de 2020 por un panel hermano. Aun inconforme, Foot Locker recurrió al Tribunal Supremo, quien el 20 de enero de 2022 revocó al Tribunal Apelativo por denegar el recurso concluyendo que el foro primario no cumplió con la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V. Particularmente señaló que ameritaba devolverse al foro primario para que señalara los hechos materiales que encontró de buena fe controvertidos y al denominar como asuntos en controversia, hechos que realmente constituyen cuestiones de derecho.[14]

El 13 de septiembre de 2023, el foro recurrido emitió una Resolución Nunc Pro Tunc[15], a los únicos fines y, conforme al mandato del Tribunal Supremo en el caso *Marcos Delgado Adorno v. Foot Locker Retail*, infra, enmendar la Resolución de 22 de octubre de 2019 para establecer de manera específica los hechos en controversia. El foro recurrido corrigió y señaló los siguientes hechos como controvertidos; 1) si el Sr. Marcos Delgado tenía conocimiento, fue testigo y/o participó

---

[13] El 6 de noviembre de 2019 el señor Delgado Adorno solicitó al TPI reconsiderar los hechos incontrovertidos núm. 43, 44, 47 al 49, 51-52, 56, 60 y 70 para encontrarlos controvertidos.

[14] Véase, *Marcos Delgado Adorno v. Foot Locker Retail, Inc.*, 208 DPR 622 (2022).

[15] El nombre no hace la cosa, la referida resolución no es una *nunc pro tunc,* toda vez que afecta los derechos sustantivos de las partes.

de aparentes transacciones ilegales en la tienda, según alega Foot Locker, 2) de determinarse que los videos que interesa presentar Foot Locker son admisibles, si se desprende de los mismos las supuestas transacciones ilegales por parte de los empleados y el Sr. Marcos Delgado, 3) qué conocimiento, si alguno, tenía el Sr. Marcos Delgado de las cámaras de seguridad, del manejo de las mismas y de los videos, y, 4) si como resultado de los alegados hallazgos obtenidos luego de revisados los videos, se le solicitó al Sr. Marcos Delgado que tomara medidas correctivas al respecto y si éste implementó alguna. Inconforme aún, Foot Locker presentó una solicitud de reconsideración que, luego de la respectiva oposición, fue declarada no ha lugar por el foro recurrido.

Insatisfecho con dicha determinación, Foot Locker comparece nuevamente ante este Tribunal, y le imputa al Tribunal de Primera Instancia la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al incumplir con el mandato del Supremo y continuar sin mencionar que hechos están realmente y de buena fe controvertidos, pues continuó ignorando todos y cada uno de los hechos previamente ignorados por el TPI en la Resolución revocada. La llamada "*Resolución Nunc Pro Tunc*" continúa incumpliendo con la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V. [R36.4], pues inventa cuatro supuestos nuevos "hechos en controversia" que no fueron objeto de las mociones de las partes respecto a la moción de sentencia sumaria, y continúa llamando a la **especulación** respecto a sí están o no en controversia más de 25 hechos que si fueron objeto de las mociones de las partes respecto a la moción de sentencia sumaria.

> Erró el Tribunal de Primera Instancia al reformular sus dos "asuntos en controversia" objeto de su resolución revocada en cuatro supuestos nuevos "hechos" que no fueron presentados por las partes y que por definición no pueden estar "controvertidos", porque ninguna parte lo hizo.

> Erró el Tribunal de Primera Instancia al dejar de consignar los hechos relacionados con los videos de las cámaras de seguridad y sin hacer una determinación de autenticidad, cuando los hechos incontrovertidos presentados por Foot Locker sobre este asunto están sustentados por **admisiones** y testimonio bajo juramento para establecer dicha autenticidad y cuando no existe razón alguna en el récord para pensar que los videos presentados por Foot Locker no son lo que Foot Locker sostiene que son.

Como adelantáramos, la parte recurrida no compareció, por lo que, sin el beneficio de su comparecencia, procedemos a disponer del recurso de epígrafe.

**II**

**A.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. 32 LPRA sec. 3491; *Rivera et al. v. Arcos Dorados et al.,* 2023 TSPR 65, 212 DPR ___ (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction Inc.,* 201 DPR 703, 710 (2019). Aunque la característica principal del recurso reside en el carácter discrecional del mismo, tal determinación no es irrestricta, está sujeta a los criterios señalados en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Advertimos que esta Regla ha sufrido modificaciones a través del tiempo para expandir el marco discrecional que ostentan los foros revisores en la expedición del recurso.

En la actualidad, la Regla 52.1 de Procedimiento Civil, *supra,* específicamente dispone que el recurso de *certiorari* solamente será expedido:

> [p]ara revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.
>
> No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.
>
> Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u

orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

32 LPRA Ap. V, R. 52.1.

Superado el análisis al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* el foro apelativo deberá auscultar los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones para guiar su discreción al intervenir con la resolución u orden interlocutoria recurrida. La Regla 40 dispone:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Sin embargo, la discreción no opera en el vacío y en ausencia de parámetros que la encaminen, sino que el foro apelativo cuenta con los criterios enumerados en dicha Regla para asistirlo y determinar si en un caso en particular procede que se expida

el auto discrecional de *certiorari. BPPR v. SLG Gómez López,* 2023 TSPR 145, 213 DPR ___ (2023).

Los tribunales apelativos no debemos intervenir en las determinaciones del foro primario, a menos que se demuestre que el juzgador: (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera y Otros v. Bco. Popular,* 152 DPR 140, 155 (2000); *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

**B.**

La sentencia sumaria promueve una solución justa, rápida y económica para litigios de naturaleza civil en los que no hay controversia genuina sobre hechos materiales que componen la causa de acción. *Birriel Colón v. Econo y otros,* 2023 TSPR 120, 213 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros,* 2023 TSPR 80, 212 DPR ___ (2023); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece que la sentencia sumaria procede cuando las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan que no existe una controversia real y sustancial respecto a algún hecho esencial y material. *Íd.,* pág. 291.

El tribunal podrá dictar sentencia sumaria a favor del promovente, sin necesidad de celebrar un juicio, si no existe controversia de los hechos materiales que motivaron el pleito y únicamente resta aplicar el derecho a los no controvertidos. *González Meléndez v. Mun. San Juan et al.,* 2023 TSPR 95, 212 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Roldán Flores v. M. Cuebas et al,* 199 DPR 664, 676 (2018). La sentencia sumaria únicamente procede cuando el derecho aplicable lo justifica. La Regla 36.3 de Procedimiento Civil, *supra,* dispone los requisitos con los que

debe cumplir una moción de sentencia sumaria. *Oriental Bank v. Perapi et al*, 192 DPR 7, 25 (2014).

La parte promovente de la moción de sentencia sumaria tiene que desglosar los hechos sobre los que alega no existe controversia. Además de especificar para cada uno la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. *Roldán Flores v. M. Cuebas et al*, supra, pág. 676; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Mientras que, la parte que se opone a una moción de sentencia sumaria tiene que demostrar que existe controversia en cuanto a algún hecho material. Se considera un hecho material aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Roldán Flores v. M. Cuebas et al*, supra. Para ello, el promovido deberá presentar una contestación detallada y específica, y refutar los hechos que entiende que están en disputa con evidencia sustancial. *Birriel Colon v. Econo y otros*, supra; *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010). Si, al contrario, asume una actitud pasiva y descansa únicamente en sus alegaciones, se expone a que se dicte sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo, de proceder en derecho. *León Torres v. Rivera Lebrón*, supra, págs. 43-44.

Cualquier duda no es suficiente para derrotar la procedencia de una moción de sentencia sumaria. La duda existente tiene que permitir concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Los tribunales solo podemos concluir que existe una controversia real y sustancial en cuanto a un hecho material, cuando el oponente presenta prueba que podría inducir a un juzgador racional a resolver a su favor. *Oriental Bank v. Perapi et al*, supra, pág. 26.

La sentencia sumaria tampoco procede, si existen alegaciones afirmativas en la demanda que no han sido refutadas y de los documentos que acompañan la moción de sentencia sumaria surge

controversia sobre algún hecho material y esencial, o cuando como cuestión de derecho no procede el remedio sumario. *Oriental Bank v. Perapi et al,* supra, págs. 26, 27.

El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. No obstante, al revisar la determinación del Tribunal de Primera Instancia, únicamente podrá considerar los documentos que se presentaron ante ese foro. Las partes no podrán traer en apelación evidencia que no fue presentada oportunamente ante el Tribunal de Primera Instancia, ni esbozar teorías nuevas o esgrimir asuntos nuevos. El tribunal apelativo únicamente puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales y si el derecho se aplicó correctamente. Sin embargo, no puede adjudicar hechos materiales en disputa porque esa tarea es del foro de primera instancia. *Meléndez González et al v. M. Cuebas,* 193 DPR 100, 114, 116 (2015).

El Tribunal Supremo de Puerto Rico adoptó la norma establecida en la esfera federal de que la oposición a la sentencia sumaria no es el vehículo apropiado para presentar reclamaciones nuevas que nunca antes habían sido aducidas. Por esa razón, la parte demandante tiene vedado cualquier intento de incorporar reclamaciones nuevas o corregir deficiencias en su demanda, una vez sometida una solicitud de sentencia sumaria. El procedimiento adecuado en esas circunstancias es solicitar la anuencia del tribunal para enmendar la demanda. *León Torres v. Rivera Lebrón,* supra, págs. 45-49.

Sobre el uso de declaraciones juradas como base para sustentar una solicitud u oposición a Sentencia Sumaria, la Regla 36.5 de Procedimiento Civil específicamente dispone que:

> Las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del o de la declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el o la declarante está cualificado para testificar en

cuanto a su contenido. Copias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta. ...

En *Roldán Flores v. M. Cuebas*, 199 DPR 664, 677-678 (2018), el Tribunal Supremo abundó sobre las mismas. Reafirmó que las declaraciones juradas que solo contengan conclusiones, sin hechos específicos que apoyen las mismas, no tendrán valor probatorio para el juzgador. Es decir, las declaraciones deben contener hechos específicos sobre los aspectos sustantivos del caso o sus elementos, así como también los hechos que demuestren el conocimiento personal del declarante sobre el asunto del cual declara. Debe demostrar afirmativamente que el declarante está capacitado para testificar sobre lo que declara. *Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 60 Fed. R. Serv.3d 894 (2005).

Tener conocimiento personal es que el testigo conozca los hechos de primera mano, directamente, a través de sus sentidos, y que no se trate de opiniones o conclusiones que no estén basadas racionalmente en su percepción. R. Emmanuelli Jimenez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., Puerto Rico, Editorial Situm Inc., 2015, pág. 348. Lo ideal sería que los hechos específicos que demuestran el conocimiento personal del declarante surjan expresamente de la misma declaración jurada. En ocasiones, el conocimiento personal será inferido del contenido o el contexto de la declaración. No obstante, si el conocimiento personal se va a inferir la base de tal inferencia debe ser parte de la declaración. *Roldán Flores v. M. Cuebas*, supra.

Ahora bien, existen circunstancias y litigios en los cuales el mecanismo de sentencia sumaria no es apropiado para disponer de las controversias. Particularmente, en aquellos casos en que los documentos o declaraciones juradas presentadas no son suficientes para que los tribunales reúnan ante sí toda la verdad de los hechos.

*Meléndez Gonzalez v. M. Cuebas*, supra, pág. 137; *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 309, esc. 13 (1994). Así también, controversias con elementos subjetivos, en las que el factor de credibilidad juega un papel esencial o decisivo para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso del juicio. *Meléndez González v. M. Cuebas*, supra; *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001); *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997). Después de todo, una sentencia sumaria mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley. *Jusino et als. v. Walgreens*, supra, pág. 578; *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990).

**III**

De ordinario, como Tribunal de Apelaciones nos encontramos en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. Venimos obligados a examinar el expediente de la manera más favorable hacia la parte que se opone a la misma, en este caso, el señor Adorno González. Quiere decir que toda inferencia permisible será resuelta a su favor. *Meléndez González et al. v M. Cuebas*, supra. Por lo tanto, debemos examinar tanto la moción de sentencia sumaria como su oposición para determinar si éstas cumplen con los requisitos de forma de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa, y si no existen hechos materiales en controversia.

De no existir controversia sobre hechos materiales debemos evaluar si procede en derecho la concesión del remedio. *Íd.* Por el contrario, de existir hechos materiales en controversia, debemos cumplir con lo requerido por la Regla 36.4 de Procedimiento Civil (32 LPRA Ap. V, R. 36.4), exponiendo específicamente cuáles son los hechos materiales en controversia y cuáles los incontrovertidos, a la luz del expediente ante nuestra consideración.

Como dijéramos, en el caso ante nos, Foot Locker nos solicita la revisión del dictamen emitido por el foro *a quo*, en el cual declaró No Ha Lugar la *Moción de sentencia sumaria*. Específicamente, sostiene dicha parte que: erró el foro primario al incumplir con el mandato del Tribunal Supremo y continuar sin mencionar qué hechos están realmente y de buena fe controvertidos, pues continuó ignorando todos y cada uno de los hechos previamente ignorados por el TPI en la Resolución revocada. Sostiene que la llamada *"Resolución Nunc Pro Tunc"* continúa incumpliendo con la Regla 36.4 de Procedimiento Civil, *supra*, pues inventa cuatro supuestos nuevos "hechos en controversia" que no fueron objeto de las mociones de las partes respecto a la moción de sentencia sumaria, y continúa llamando a la especulación respecto a sí están o no en controversia más de 25 hechos que sí fueron objeto de las mociones de las partes respecto a la moción de sentencia sumaria.

En cuanto a este primer error señalado concluimos que erró el foro primario al no disponer de ciertos hechos relacionados, su mayoría, al contenido de los videos de las cámaras de seguridad de la tienda. Ciertamente el foro primario venía obligado a determinar si los hechos propuestos estaban o no controvertidos, no debía guardar silencio. Luego de un examen de la solicitud de sentencia sumaria, su oposición y el expediente ante nuestra consideración, entendemos que los siguientes hechos, según presentados en la *Moción de sentencia sumaria* de Foot Locker se encuentran en controversia. Nos referimos a los hechos núm. 52 a 61, inclusive; 66, 71, 75, 88, 89, 91 y 97.

En cuanto al segundo hecho en controversia emitido por el TPI en su Resolución *Nunc Pro Tunc,* colegimos, además, que procede su modificación. Nos referimos específicamente al siguiente hecho:

> De determinarse que los videos que interesa presentar Foot Locker son admisibles, si se desprende de los mismos las supuestas transacciones ilegales por parte de los empleados y el Sr. Marcos Delgado.

Se modifica este hecho para que lea:

Habiéndose admitido los videos en evidencia, el 6 de agosto de 2019; está en controversia, si se desprende de los mismos, las supuestas transacciones ilegales por parte de los empleados y el Sr. Marcos Delgado, o sea, su valor probatorio.

Por otro lado, la parte peticionaria alega en el segundo señalamiento que, el Tribunal de Primera Instancia erró al reformular sus dos "asuntos en controversia", objeto de su resolución revocada en cuatro supuestos nuevos "hechos" que no fueron presentados por las partes y que por definición no pueden estar "controvertidos", porque ninguna parte los propuso.

En cuanto a este segundo error señalado, no fue cometido. El foro de instancia no está obligado por las controversias que puedan identificar las partes o la forma de definir las mismas. Si bien, estas son útiles para el juzgador, pues las partes son quienes mejor conocen su caso, el tribunal posee discreción para, a la luz de los hechos señalados por ambas partes y el expediente en su totalidad, definir aquellas controversias intrínsecas alternas, pero pertinentes a la reclamación.

Por último, Foot Locker señala en el tercer señalamiento que, "erró el Tribunal de Primera Instancia al dejar de consignar los hechos relacionados con los videos de las cámaras de seguridad y sin hacer una determinación de autenticidad, cuando los hechos incontrovertidos presentados por Foot Locker sobre este asunto están sustentados por admisiones y testimonio bajo juramento para establecer dicha autenticidad y cuando no existe razón alguna en el récord para pensar que los videos presentados por Foot Locker no son lo que Foot Locker sostiene que son".

En cuanto al tercer y último error, se cometió. Se presentó suficiente evidencia mediante declaraciones juradas de Foot Locker, que no fueron controvertidas por la parte demandante, donde se autenticaron los videos. Satisfecho el criterio de autenticación y en

ausencia de regla de exclusión, como prueba de referencia o privilegios, la evidencia electrónica se puede admitir. El juzgador deberá examinar los videos y determinar si de ellos se desprenden las transacciones imputadas.

Por último y, no menos importante, no podemos abstraernos de la realidad del largo trámite de esta reclamación que, al día de hoy, va para 5 años de presentada y la cercanía del juicio en su fondo. Por tal razón, resumimos que los hechos núm. 52 a 61, inclusive; 66, 71, 75, 88, 89, 91 y 97 de la solicitud de sentencia sumaria de Foot Locker están controvertidos; se modifica el segundo hecho controvertido de la Resolución *Nunc Pro Tunc* recurrida y se reitera la admisibilidad de los videos, no su valor probatorio o la interpretación de su contenido. Así las cosas, se devuelve el caso al Tribunal de Primera Instancia para que actúe conforme lo aquí expresado.

## IV

Por todo lo expuesto, expedimos el auto y modificamos la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones